# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

TRACE STAFFING SOLUTIONS, LLC; and CEP TRANSITION CO., LLC,

    Plaintiffs/Counter-Defendants,

v.

MANUFACTURERS ALLIANCE INS. CO.; PENNSYLVANIA MANUFACTURERS' ASSOC. INS. CO.; and ZURICH AMERICAN INS. CO.,

    Defendants/Counter-Claimants.

CV417-083

# ORDER

Career Employment Professionals, Inc.,[1] sought and obtained workers' compensation policies from Pennsylvania Manufacturers' Association Insurance Company ("PMAIC") for policy years 2013 and 2014. Doc. 20 (Amended Compl.) at ¶ 11. Plaintiffs then received a workers compensation policy from Zurich American Insurance Company ("Zurich") covering policy year 2015. *Id.* at ¶ 17. Plaintiffs contend that

---

[1] Prior to filing this suit, Career Employment Professionals underwent a series of commercial conversions until it became Trace Staffing Solutions, LLC ("Trace"). A new company (CEP Transition Company, LLC ("CEP")) was created by the parent company to inherit "certain assets and liability, expressly including claims by and against defendants" PMAIC and Manufacturers Alliance Insurance Company ("MAIC"). Suit was brought in both entities' names.

PMAIC and MAIC (collectively "PMA") and Zurich have "mishandled claims, causing Trace or CEP to pay excessive amounts . . . for deductibles and retrospective premiums." *Id*. at ¶¶ 15 & 20. As a result, PMA has demanded $336,227.60 and Zurich has demanded $571,714 (plus $22,915.55 in interest, accruing daily). *Id*. at ¶¶ 23 & 24. Disputing that they owe anything on defendants' mishandled claims, plaintiffs have sued for breach of contract, breach of fiduciary duty, injunctive relief, and attorneys' fees, *id.* at 25-59, with defendants filing counterclaims. Docs. 26, 27, 32 & 33. The parties' cross-motions to compel are pending before the Court. Docs. 45 & 53.

**A. MAIC's Motion to Compel**

MAIC sought discovery on plaintiffs' corporate structure and maneuvers, particularly the nature of "the transfer of rights and liabilities associated with the PMA policies" that "were transferred to [CEP,] a newly-created company that appears to have been created merely as a corporate vehicle for claims at issue in this litigation." Doc. 45-1 at 4. In lieu of elucidating the corporate restructuring

occurring in the background of litigation,[2] plaintiffs proposed placing into an escrow account sufficient funds to assuage any "concern[s] about the collectability of any judgment." *Id*. at 5 (citing doc. 45, Exh. D). Efforts to create such an escrow account proved futile, however, as both sides failed to reach a compromise about the terms of the escrow account. *Id*., Exhs. E, F, G, H & I. So MAIC now seeks full responses to its original discovery requests, to suss out precisely which entity has the rights and obligations to the contract it originally held with Career Employment Professionals, Inc.

Arguing that plaintiffs' corporate structure and transfers of obligations/rights are relevant to their defenses and counterclaims, MAIC seeks documents "reflecting, memorializing or otherwise relating to the past and present ownership" of both Trace and CEP, including those documents "relating to transfers of ownership interest[s]." Doc. 45-1 at 9; *id*. at 13 (seeking interrogatory responses regarding the same transactions). Plaintiffs generally objected to the requests on the basis of relevance and "proportionality" and referred defendants to the

---

[2] Defendants note that three different configurations of entities have been named as plaintiffs on the three filed complaints.

Secretary of State's office, apparently to sniff out the answers for themselves, and to the Second Amended Complaint, which represents that all liability/rights to the contract between Career Employment Professionals, Inc. and PMA has been assigned to CEP. *Id.* MAIC argues that "find it yourself" and "just trust us" are legally insufficient responses -- not an entirely unreasonable position. But plaintiffs attached the assignments to the operative Complaint (doc. 49 at 4-5 (citing doc. 20-1 at 4-11, 12-14 & 15-20)), and have since provided the purchase agreement by which Trace was sold to another company, with those rights specifically carved out (doc. 49 at 11) -- meaning, defendants have had the information they seek (*i.e.*, whether CEP has been assigned all rights to the PMA contracts) since the Second Amended Complaint was filed. It is not clear precisely what further *relevant* documents and information are necessary to address defendants' outstanding requests.

At bottom, defendants worry that they may be unable to collect a judgment against an "empty shell [created] to insulate Trace and related entities" from their counterclaim. Doc. 45-1 at 12; *see also* doc. 52 at 2-3 (noting the suspect timeline between demanding payment

from plaintiffs' predecessors for the outstanding balance and the creation of the new entity, as "less than five (5) months after PMA sought to collect the amount owed by Trace, and Trace refused to pay that balance, Trace siphoned off its liabilities to PMA and transferred them to a new entity -- CEP."); doc. 54 at 10 (arguing discovery is "essential" "as it relates to plaintiffs' actions in siphoning-off claims at-issue in this litigation and vesting them in a potentially underfunded newly-formed 'litigation' entity, CEP."). Any allegations of transfers specifically to avoid liabilities, of course, would be subject to another suit. *See generally* Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70 *et seq*. And defendants' ongoing speculation regarding whether the proper entities -- the ones that actually hold rights/obligations under the Worker's Compensation contract with PMA -- are named in the Complaint and the Counterclaim does not license their unlimited plumbing of plaintiffs' financial records.

Moreover, a party's financial solvency is generally *not* relevant pre-judgment. *See* Fed. R. Civ. P. 69(a)(2) (providing for post-judgment discovery); *see, e.g., Liberty Ins. Corp. v. Southwest Traders, Inc.*, 2013 WL 12150335 at *2 (C.D. Cal. Aug. 27, 2013) ("whether Southwest can

afford to pay, Southwest's general financial condition, [etc.] are simply not relevant to whether Southwest owes under the Worker's Compensation policy and, if so, how much."). Defendants' discovery is keyed to figuring out who can pay what they contend they are owed, seeking to troll through plaintiffs' organization history, ownership, management, transactions, and assets for the past five years. Such a search is premature and unnecessary to the dispute at hand: whether the Worker's Compensation insurance premiums were calculated correctly to begin with and whether additional payments are owed. *See* doc. 20 (Amended Complaint); docs. 26, 27, 32 & 33 (Counterclaims).

Plaintiffs have sufficiently answered defendants' concerns about whether the right parties are named in the Complaint and Counterclaim. Any further discovery appears relevant *only* to plaintiffs' financial condition and is properly the subject only of *post-judgment* discovery. Defendants' motion to compel further responses (doc. 45) is **DENIED**, as is its motion for costs and attorney's fees in bringing the motion.

### B. Plaintiffs' Motion to Compel, Motion for Protective Order, and Motion for Modification of the Scheduling Order

Plaintiffs first complain that defendants have failed to answer

interrogatories under oath and refused to produce responsive documents and appropriate witnesses. Doc. 53 at 3. Defendants, however, represent that they have produced verified interrogatories, doc. 54 at 18 & doc. 55 at 2, mooting that dispute entirely. Plaintiffs' statement that they have been "prejudiced" by the delay in producing signed verifications (doc. 57 at 9-10) is insufficient to warrant the imposition of sanctions. The Court does not *per se* impose sanctions for a delayed response, particularly where, as here, plaintiffs have offered no argument about why such sanctions are necessary to render them whole. *See* doc. 57 at 10. Zurich, too, represents that it has produced all responsive documents to plaintiffs (doc. 55 at 3) -- a contention which plaintiff does not dispute. That dispute, too, is a dead issue that certainly did not warrant the Court's attention.

Plaintiffs further protest that defendants have unreasonably demanded that plaintiffs produce witnesses on a wide swath of completely irrelevant topics for a minimum of 6 days, completely disproportionate to the needs of the case. Doc. 53 at 8. Pam Cole, the former principal of Career Employment Professionals, Inc., and the current manager of CEP, has been designated as the Fed. R. Civ. P.

30(b)(6) witness for both Trace and CEP. Defendants want to depose her as both an individual and a Rule 30(b)(6) witness, and demand that plaintiffs commit to producing Ms. Cole for at least three and possibly "six, or more, days of deposition." Doc. 54 at 17; *see also* doc. 55 at 8-9. The Federal Rules, of course, provide that if there is a need to continue a deposition into a second day, the deposition may exceed the anticipated single-day, seven-hour limit. Fed. R. Civ. P. 30(d)(1); 2000 Advisory Committee Note. And plaintiffs agree that, if the depositions take that long, they will certainly produce Ms. Cole (or their other witnesses) for a second day of questioning. Doc. 57 at 3; doc. 53-2 at 6 & 8-9).

This is a puzzling dispute: plaintiffs will produce their witnesses, but only as long as defendants require to question them? The matter resolves itself. The Court trusts that counsel will be efficient, direct, and prudent in questioning those witnesses, so that no one's time is wasted retreading the same ground. If depositions do slide into an additional day, the Court is confident that counsel can handle scheduling those further days as they prove necessary, and move through any *hypothetical* extra day(s) as efficiently as possible. The

Court simply will not order that Ms. Cole's (or any other witness's) deposition be fixed to a certain amount of time, *ex ante*. To the extent that defendants also seek to depose Ms. Cole on plaintiffs' financial health, as discussed above, such discovery is premature and irrelevant at this stage of litigation. Counsel are expected to recognize this in conducting their depositions of Ms. Cole either as a Rule 30(b)(6) designee or as an individual.

Finally, plaintiffs imply that defendants ginned up the deposition-duration dispute as pretext for refusing to produce their own Rule 30(b)(6) witnesses. Doc. 57 at 5. Defendants, however, represent that they are indeed willing to produce witnesses to testify to the categories identified by plaintiffs, but because multiple witnesses in multiple locations are necessary they require some flexibility in scheduling those depositions. Doc. 54 at 6-7; doc. 55 at 6-7. The Court again fails to apprehend what the dispute is all about, despite reviewing dozens of pages and exhibits recapitulating counsels' email exchanges and proposed dates. The Court has better things to do with its limited time than serve as an arbiter of calendaring conflicts between counsel. Plaintiffs' motion to compel and motion for a protective order (doc. 53)

are **DENIED**, as is their motion for costs and attorney's fees.[3] Their motion to amend the Scheduling Order is, however, **GRANTED**, to accommodate the further discovery that must take place.

**C. Conclusion**

The parties are clearly willing to move forward with discovery and are able to propose, discuss, and agree upon dates for depositions. Because more time is needed to complete discovery, the parties are **ORDERED** to meet and confer in good faith both to schedule any outstanding depositions and to agree upon a joint Amended Scheduling Order within 14 days of service of this Order.[4] The parties shall file

---

[3] Defendants also dispute that plaintiffs can use their experts as Rule 30(b)(6) representatives (doc. 54 at 9), but given that no such deposition notices have yet been served (*id*. at 10; doc. 53 at 8 (admitting that the dispute centers around defendants' *proposed* list of deposition topics)), that matter is not ripe. The Court notes, however, that nothing in the Federal Rules precludes plaintiffs from designating a retained expert as their witness. Fed. R. Civ. P. 30(b)(6) (providing that an "organization must designate one or more officers, directors, or managing agents, or designate *other persons who consent to testify on its behalf*"). Defendants may be unconvinced that, because plaintiffs' own employees merely suspected "something was wrong" with the Workers' Compensation claims and "relie[d] on experts to determine the true nature and extent of the problem" (doc. 57 at 7; doc. 53 at 9-10 (arguing that defendants "abuse Rule 30(b)(6) by demanding that one or more internal plaintiff witnesses acquire the knowledge of experts")), plaintiffs' experts must be deposed instead. But defendants' skepticism does not confer upon them the right to select *plaintiffs'* Rule 30(b)(6) designee, and they have not cited to this Court any law proscribing plaintiffs' ability to so designate their experts. *See* doc. 54 at 11-15. If plaintiffs' designees are unprepared to testify to the topics noticed in yet unserved subpoenas, defendants may file an appropriate motion *at that time*.

[4] Requiring meaningful consultation can lead to informal resolution and thus

their joint request to amend the Scheduling Order within 21 days of service of this Order.

In summary, MAIC's motion to compel (doc. 45) is **DENIED**, and plaintiffs' motion (doc. 53) is **DENIED** as to their requests to compel and for a protective order, and **GRANTED** as to their request to amend the Scheduling Order.

**SO ORDERED,** this __17th__ day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

conservation of court resources. *Avera v. United Airlines, Inc.*, 465 F. App'x 855, 858-59 (11th Cir. 2012) (magistrate judge did not abuse his discretion in denying, without prejudice, plaintiff's motion to compel discovery where plaintiff had not sought to resolve his discovery dispute with defendant before filing the motion); *Jo Ann Howard & Associates, P.C. v. Cassity*, 2012 WL 1247271, at *8 (E.D. Mo. Apr. 13, 2012) (rejecting compulsion request in part because "the failure of the parties to communicate *materially* impeded their resolution of this matter.") (emphasis added).