# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| CAREER EMPLOYMENT PROFESSIONALS, INC. d/b/a Trace Staffing Solutions, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CV417-083 ) |
| MANUFACTURERS ALLIANCE INSURANCE COMPANY, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Manufacturers Alliance Insurance Company and Pennsylvania Manufacturers' Association Insurance Company's (collectively "PMA") Motion to Compel, doc. 64, and Amended Motion to Compel, doc. 65. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, the Court determines both parties should be assessed certain costs and fees associated with bringing this motion pursuant to Fed. R. Civ. P. 37 and **DIRECTS** the parties to file supplemental briefs or indicate that they have resolved this issue by agreement.

## BACKGROUND

The Court has already recited the pertinent factual background of this case in disposing its myriad discovery disputes. Docs. 61, 101, 102. All that is relevant now is the December 19, 2018 Notice of Taking Rule 30(b)(6) Depositions PMA sent to plaintiffs. Doc. 65-1 at 3. This notice included 59 topics covering a variety of issues. *Id.* Only days before the deposition was set to occur, plaintiffs served objections to the majority of topics and indicated that they would not designate a deponent for many others. *Id.* at 3.

The deposition went forward, but not as planned. Before asking any questions, counsel engaged in an extended, on the record, debate regarding the appropriate manner in which to handle the examination. Doc. 65-4 at 3-11 (the deposition transcripts begin with a 33-page dispute which, although it is difficult to determine for certain, appeared to encompass over an hour of deposition time). After bandying about in this fashion, defendants left the room to give plaintiff a two-hour break to further prepare before resuming the deposition, and swearing the witness. Doc. 65-4 at 13. Over the course of the next three days, all defendants pressed plaintiff's 30(b)(6) designee, Ms. Grimes, on a

variety of topics—including the financial arrangements of plaintiffs (more on this later). For some of these questions, Ms. Grimes was suitably prepared. For others, she was not. Defendants raised the following issues with her preparation:

1. She did not receive the notice until the week of January 7, 2019;

2. She did not begin preparing for the deposition until the day before;

3. She spent no more than 8 hours preparing;

4. She did not read the operative complaint;

5. She was unaware of the allegations of claims mismanagement contained in the complaint;

6. She was unaware of the causes of action involved in the complaint;

7. She was unaware of the number and names of workers' compensation claims involved in the case;

8. She was unable to provide the years that the PMA policies covered;

9. She did not read the 2013 insurance policy from MAICO;

10. She did not read the majority of the 2014 insurance policy from PMAICO;

11. She reviewed no more than five pages of the two lengthy PMA policies;

12. She did not review any emails in advance of her deposition;

13. She was unable to speak on emails sent regarding claims handling or mismanagement;

14. She did not review any of the document production prior to deposition or production;

15. She was unfamiliar with her discovery responses;

16. She did not read documents regarding transferring of PMA related liabilities or assets;

17. And was unable to provide evidence that plaintiff's implemented precautions contained in plaintiffs' safety manual.

Doc. 65-1 at 16-17. More concerning, however, is that defendants allege that Ms. Grimes may lack the authority to speak for plaintiffs.[1] *Id.* at 4.

Plaintiffs object to this characterization of the events. They argue that defendants PMA manipulated a deposition exhibit to exclude relevant information. Doc. 67 at 4. Plaintiffs also note that Ms. Grimes was able to answer many questions from memory—although there were exhibits that could have been used to refresh her recollection—and that she appropriately relied on her broker to determine which policies to purchase. *Id.* at 6-7. Plaintiffs also argue that it is inappropriate for the defendants to argue about the failure to produce a safety manual when no formal discovery request was made. *Id.* at 8. Finally,

---

[1] Plaintiffs did not refute this point in their brief in opposition. Doc. 67.

plaintiffs argue that defendants violated this Court's October 17, 2018 order which prohibited defendants from deposing Ms. Grimes on "plaintiffs' financial health." *Id.* at 9. Both parties are requesting sanctions from the Court for the other's misdeeds.

## ANALYSIS

### I. Motion to Compel

Rule 30(b)(6) requires that a deposition notice "describe with reasonable particularity the matters for examination." "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* "The persons designated must testify about information known or reasonably available to the organization." *Id.* This "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The [entity] must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006) (quotations and citations

omitted) (*see also In re Brican American LLC Equip. Lease Litig.*, 2013 WL 5519969, at * 3 (S.D. Fla. Oct. 1 2013) ("A corporation must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters.") (*citing Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997))).

It is clear, however, that "absolute perfection is not required of a 30(b)(6) witness." *QBE Ins. Corp. v. Jorda Enters. Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012). In fact, "[t]he mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *Id.* (*citing Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 191 (D. N.J. 2008); *Chick-fil-A v. ExxonMobile Corp.*, 2009 WL 3763032, at *13 (S.D. Fla. Nov. 10, 2009)). It is equally clear that "[i]f the designated deponent cannot answer questions regarding the subject matter as to which he is designated, then 'the corporation has failed to comply with its Rule 30(b)(6)

obligations and may be subject to sanctions.' "[2] *Cont'l Cas. Co. v. First Fin. Emp. Leasing, Inc.*, 716 F. Supp. 2d 1176, 1189 (M.D. Fla. 2010) (*citing King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995)). The initial inquiry, then is whether and to what extent Ms. Grimes was prepared—or unprepared—to answer questions on the properly noticed deposition topics.

First, some of the questions noticed for plaintiff's 30(b)(6) deposition strayed over the boundaries established in the Court's October 17, 2018 Order. These topics, numbers 6, 8, 9, 10, 12, 13, 14, and 15, request information about plaintiffs' formation and financial health. Defendants have not indicated why they think these requests are relevant at this point in the case. Instead, in a footnote, the defendants state that they strongly disagree with the plaintiff's characterization and believe that they adequately tailored their requests to conform with the contours of the Court's order. Doc. 70 at 9.

---

[2] The extent and type of sanctions available in this circumstance vary dramatically. "Some courts have stated generally that when the Rule 30(b)(6) representative claims ignorance of a subject during the deposition, the organization is precluded from later introducing evidence on that subject unless the evidence was previously unavailable." *Cont. Cas. Co.*, 716 F. Supp. 2d at 1190 (*citing Function Media, LLC v. Google, Inc.*, 2010 WL 276093, * 1 (E.D. Tex. Jan. 15, 2010); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007); *Ierardi v. Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991); *Rainey v. American Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C.1998).

7

As this Court has already explained, is explaining now, and will explain again *infra*, these questions are out-of-bounds by the terms of this Court's prior Order, irrelevant to the issues at hand, and should have been reserved *only* for post judgment discovery. As the Court previously explained, "[a]ny allegations of transfers specifically to avoid liabilities, of course, would be subject to another suit." Doc. 61 at 5. Searching for potentially actionable or voidable transfers "is premature and unnecessary to the dispute at hand: whether the Worker's Compensation insurance premiums were calculated correctly to begin with and whether additional payments are owed." *Id.* at 6. Defendants are not entitled to discovery on these issues. Thus, Ms. Grimes' failure to adequately respond—if her responses were indeed inadequate—cannot justify compelling further testimony.

Nor was Ms. Grimes as woefully unprepared as defendants suggest. For example, they allege that Ms. Grimes was uncertain as to the dates covered by the relevant insurance policies. However, a review of the deposition indicates that while she was *initially* slightly uncertain, she answered the question. Doc. 65-4 at 29. Likewise, her "failure" to read the entire insurance policy and answer questions about

multiple several hundred-page documents is similarly irrelevant to the adequacy of her preparation. In her capacity as a 30(b)(6) witness, she was obligated to answer questions on a wide swath of information. That she was unable to remember all of the details involved in the insurance policy is hardly dispositive. *Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, 2013 WL 12246988, * 6 (N.D. Ga. June 4, 2013) (noting that it is not unusual that a "corporate representative or representatives might not know every answer to every question about specific dates or details of that sort.").

However, defendants are not incorrect in their concern for Ms. Grimes' overall preparation.[3] First, it appears from the transcript of the deposition that Ms. Grimes may not have had the authority to bind plaintiff Trace. This alone is justification to re-depose her (or whatever new representative Trace selects). Second, Ms. Grimes **was** unprepared to answer many of defendants' questions. She was evasive, and unsure about certain key aspects of the claims, the complaint, the discovery, and the policies at issue. This might be forgivable, if she testified solely

---

[3] Although defendants make much hay out of when Ms. Grimes became aware of the deposition and the fact that she prepared for the deposition on the day before it occurred, the Court does not consider this to be *per se* evidence of unpreparedness.

in her individual capacity. After all, a deponent is only able to testify to the extent of their knowledge. However, Ms. Grimes was designated as a 30(b)(6) witness, and in that capacity, personifies the knowledge of the corporation or entity she represents. As defendants rightly point out, she was obligated to adequately prepare for her deposition and she did not. For example, the following exchange occurred,

> **Q: I know you have not read them because you testified to that. So is it safe to assume that you can't direct me to any provision of either of those contacts that Trace or CEP Transition alleged was breached by PMA?**
>
> A: Correct, I will have to ask my attorneys and my broker.
>
> **Q: But Ma'am, you are aware, aren't you, that you are being put up today on behalf of Trace and CEP Transition as a representative qualified to testify on those topics, aren't you?**
>
> A: Yes.
>
> **Q: Why didn't you spend time preparing in that area?**
>
> A: Because I didn't know I needed to.

Doc. 65-4 at 97.

"Because I didn't know I needed to," is no excuse. *"Ignorantia legis neminem excusat,"* after all. Whether *she* should have understood her obligations, *counsel* certainly should have and they were responsible for ensuring that she was prepared as the Federal Rules and applicable

10

jurisprudence required. Accordingly, the Court will allow defendants to redepose Ms. Grimes (or another suitable corporate representative).

Unfortunately, the practical outcome of the discovery dispute is not the only issue the parties raise. Each side has accused the other of "gamesmanship." Plaintiffs argue that defendants deliberately withheld or doctored exhibits during the course of Ms. Grimes' deposition in an effort to paint her as "unprepared." Doc. 67 at 3. Defendants argue that plaintiffs deliberately served their objections to plaintiff's deposition notice only one business day before the deposition necessitating an emergency motion to compel. Doc. 64-1 at 3. To combat the apparent misbehavior of the parties, this additional deposition will therefore be subject to the following requirements so as to prevent some of the "gamesmanship" that the parties have complained about.

1. Either Ms. Grimes, or another 30(b)(6) witness, will be made available to testify as to the topics noticed (with the exception of those excluded by this Court's October 17, 2018 Order) and for which Ms. Grimes was originally designated to testify.

11

2. Defendants shall have a total of no more than eight hours to conduct this deposition, and that time may be divided amongst the defendants as they see fit.[4]

3. The deposition shall begin at 9am and shall run until no later than 6:30pm with one hour for a lunch break and two fifteen-minute breaks to be taken at the parties' discretion. No extensions of this time will be allowed **for any reason**.

4. Plaintiffs' counsel are **DIRECTED** to ensure that any 30(b)(6) designee both be adequately prepared to testify and have the requisite authority to bind the parties he or she represents. If only one witness is designated on behalf of all the plaintiffs, that witness will be deemed to have the requisite authority. If individual plaintiffs designate different witnesses, those designations must be explicit in plaintiffs' respective responses to the new 30(b)(6) notices. Failure to clearly and explicitly distinguish designees will waive any plaintiff's objection predicated on the witness's lack of authority. Irrespective of the number of designees, the eight-hour time limit in paragraph 2, *supra,* shall apply.

5. Defendants are **DIRECTED** to ensure that any exhibit they present is complete. Email exhibits should include prior messages and attachments included with the email at issue.

6. The cost for the court reporter and transcript fees for this deposition will be split equally between all the parties in this case.

---

[4] The Court is aware that this is a more limited time frame than the litigants may desire. The Court has been quite liberal in handling the parties' motions for extensions of time. Docs. 15, 23, 36, 83, & 103. However, defendants had one chance at deposing plaintiffs' 30(b)(6) witness and spent a great deal of time pursuing meritless questions. The Court will not be inclined to grant any extension of time.

## II. Fees and Sanctions

"Where a motion to compel is granted, attorney fees and expenses must be awarded to the prevailing party unless there was no good faith effort to resolve the motion, the non-disclosure was substantially justified, or other circumstances make an award of expenses otherwise unjust." *FormFactor, Inc. v. Micro-Probe, Inc.*, 2012 WL 1575093 at * 9 (N.D. Cal. May 3, 2012) (*citing* Fed. R. Civ. P. 37(a)(5)). "[E]ven an innocent failure [to answer discovery] is subject to sanctions, though the reason for the failure is relevant in determining what sanction, if any, to impose." 8B CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2281 (3d ed. 2010). Because the Court grants in part defendants' motion to compel, and requires the production of Ms. Grimes—or whatever representative plaintiff identifies—some sanction is warranted. Accordingly, within ten days from the date of this order, the Court will accept briefing from defendants as to the reasonable cost and fees associated with having had to bring the motion to compel. Defendants shall have five days to respond, if they so desire. In the alternative, plaintiffs and defendants may confer and agree on the reasonable costs of bringing this motion and inform the Court jointly

13

within ten days from the date of this order that all disputes over sanctions have been resolved.

However, defendants are not off the hook. The Court denies the motion to the extent that it seeks to compel discovery *specifically precluded under this Court's October 17, 2018 Order*. After reviewing the entire deposition of Ms. Grimes as well as the motions and supporting exhibits the parties submitted, it became patently obvious from the transcript that defendants spent almost an entire day seeking information regarding plaintiffs' financial status and circumstances. The Court expected that its prior order made clear to the parties that further discovery of the plaintiffs' financial condition was relevant only to the subject of post-judgment discovery. Doc. 61 at 6. Nevertheless, defendants sought to suss out further information regarding plaintiff's circumstances. For example, the following requests were made in the 30(b)(6) deposition at issue

- The formation of CEP and its organizational history, including all reasons for the formation of CEP and any transaction associated with the formation of CEP (subject to the guidance of the Court in its Order of October 17, 2018);

- The identity of any and all current and former owners, members, parent companies, subsidiaries or other

- affiliated companies of CEP, including the identity of all companies in which CEP has or previously had an ownership interest (subject to the guidance of the Court in its Order of October 17, 2018);

- The identity of any and all parent companies, subsidiaries or other affiliated companies of Trace, including the identity of all companies in which Trace has or previously had an ownership interest (subject to the guidance of the Court in its Order of October 17, 2018);

- The compensation or consideration provided or received for any of the asset or liability transfers described in Areas of Inquiry 12 and 13 (subject to the guidance of the Court in its Order of October 17, 2018);

- Corporate or business relationships or associations between Trace and CEP (subject to the guidance of the Court in its Order of October 17, 2018);

- Corporate or business relationships or associations between Trace and any of the following: Amzak CEP, LLC, PCG Family Holdings, Inc. or Amzak Trace Holdings, LLC (subject to the guidance of the Court in its Order of October 17, 2018);

- Corporate or business relationships or associations between CEP and any of the following; Amzak CEP, LLC, PCG Family Holdings, Inc. or Amzak Trace Holdings, LLC (subject to the guidance of the Court in its Order of October 17, 2018).

Doc. 64-2 at 6-7. Each of these questions directly contravenes or ignores the Court's previous order[5] which prohibited further inquiry into

---

[5] The Court's prior Order was not "guidance." *Cf. Winn-Dixie Stores v. Dolgencorp LLC*, 881 F. 3d 835, 844 (11th Cir. 2018) ("There is no imprecision in those

15

plaintiffs' financial structure or condition until after judgment. This must have been at least generally clear to defendants' counsel who attempted to exempt the inquiries from coverage by the line "subject to the guidance of the Court in its Order of October 17, 2018." Quite frankly, the Court is at a loss as to why defendants—ably represented by counsel—felt that this line of inquiry was acceptable or why they believed that the tag line would somehow prevent this Court's ire. Nor can the Court fathom why defendants wasted so much of their time and the deponent's time inquiring into plaintiffs' financial arrangement, creation, and structure. For example, the following conversation occurred during the deposition

> **Q: Okay. What did this agreement do?**
>
> A: It - - well, what the agreement did from my understanding was make it where when the money came in from the sale we put certain moneys in to CEP Transition to cover any liabilities that came up, which we still do

---

instructions, no room for evasive interpretation . . . . We don't know what else we could have said other than, perhaps, 'and we *really mean* it.' Well, we really did mean it, and we still do."). Rather the Order informed defendants that further "plumbing of plaintiffs' financial records," was not appropriate at this stage in the case. If that was somehow unclear then, the Court makes it clear now: That line of inquiry is not relevant to the parties' dispute at this time and any further inquiry, without prior approval from the Court, will result in immediate sanction.

> **Q: Why is PCG Family Holdings the entity that is distributing assets and liabilities pursuant to this agreement?**
>
> A: It is the way my attorney set it up and felt like it was the best option.
>
> **Q: Why didn't Trace transfer assets directly to CEP Transition?**
>
> A: I don't know. I don't know if they did.
>
> **Q: And you don't know why PCG Family Holdings was used as an effective middleman entity in this transaction?**
>
> A: That is something the attorneys and the CPA worked out that they thought was the best way to do it.
>
> **Q: And that is not something you brushed up on in preparation for this deposition?**
>
> A: No.
>
> **Q: Even though liabilities and assets that were being transferred down this chain are the liabilities and assets directly at issue with my clients in this litigation?**
>
> A: When CEP Transition needs the money, we put it in there.

Doc. 65-4 at 51. The deposition is littered with similar lines of inquiry designed to elicit information regarding plaintiff's ability to pay a potential judgment.

Defendants were informed that they were not entitled to information regarding plaintiff's structure and financial circumstances

pre-judgment. They nevertheless noticed deposition topics that violated that instruction, and required Ms. Grimes to answer questions in violation of that Order over the objection of plaintiff's attorney. If the failure to abide the Court's Order were, somehow, the result of oversight, plaintiffs alerted them to the issue by objecting. Rather than seek clarification of the Order, defendants filed a motion asking the Court to *compel* that information. All of this is sanctionable—potentially via this Court's inherent authority[6]—and certainly pursuant to Fed. R. Civ. Pro. 37(a)(5)(b). The Court will, as above, afford the parties an opportunity to reach an agreement as to the fees respectively imposed. Within ten days from the date of this order, the Court will accept briefing from plaintiffs as to the reasonable cost and fees associated with having had to defend the motion to compel's request for information in violation of the Court's October 17, 2018 Order. Defendants shall have five days to respond, if they so desire. In the alternative, plaintiffs and defendants may confer and agree on the

---

[6] 28 U.S.C. § 636(e)(2) grants a magistrate judge authority to "punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice." However, the Court does not feel the need to assess such serious sanctions here.

reasonable costs of bringing this motion and inform the Court jointly within ten days from the date of this order that all disputes over sanctions have been resolved. To the extent both sides find themselves exposed to similar financial sanctions as a result of their conduct, they may very well wish to avail themselves of the opportunity to resolve the sanction issue by agreement.

## CONCLUSION

For the foregoing reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, the Court determines both parties should be assessed certain costs and fees associated with bringing this motion pursuant to Fed. R. Civ. P. 37 and **DIRECTS** the parties to file supplemental briefs or indicate that they have resolved this issue by agreement.

**SO ORDERED,** this 31st day of July, 2019.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA